Case 2:15-cv-00490 Document 19 Filed in TXSD on 07/22/16 Page 1 of 15

United States District Court
Southern District of Texas
**ENTERED**
July 22, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| J.W. TATE, § | |
| § | |
| Petitioner, § | |
| VS. § | CIVIL ACTION NO. 2:15-CV-490 |
| § | |
| LORIE DAVIS,[1] § | |
| § | |
| Respondent. § | |

# MEMORANDUM AND RECOMMENDATION

Petitioner J.W. Tate is an inmate in the Texas Department of Criminal Justice - Criminal Institutions Division ("TDCJ-CID") and currently is incarcerated at the Robertson Unit in Abilene, Texas. Proceeding *pro se*, petitioner filed this petition pursuant to 28 U.S.C. §§ 2241 and 2254 on November 20, 2015.[2] The underlying conviction which is the subject of the petition is a 2005 Nueces County conviction for aggravated sexual assault of a child enhanced by a prior conviction. Petitioner claims that his constitutional rights were violated during trial and appellate proceedings. Respondent filed a motion for summary judgment on April 20, 2016 (D.E. 16) to which Petitioner did not respond. For the reasons set forth below, it is recommended that

---

[1] Lorie Davis is the newly appointed Director of the Texas Department of Criminal Justice – Correctional Institutions Division (TDCJ-CID), and is the proper Respondent. The Clerk shall substitute Lorie Davis for William Stephens. Fed. R. Civ. P. 25(d); Rule 2(a), Rules Governing Section 2254 Cases.

[2] Petitioner stated under penalty of perjury that he placed his petition in the prison mail system on November 20, 2015 and it is considered filed as of that date. *See Spotville v. Cain*, 149 F.3d 374, 376 (5th Cir. 1998) and Rule 3, Rules Governing Section 2254 Cases.

Respondent's motion for summary judgment be granted and Petitioner's application for habeas corpus relief be dismissed with prejudice. It is further recommended that any request for a Certificate of Appealability be denied.

## JURISDICTION

The court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 and venue is proper in this court because Petitioner was convicted in Nueces County, which is located in the Corpus Christi Division of the Southern District of Texas. 28 U.S.C. § 2241(d); *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000).

## BACKGROUND

Petitioner was indicted on March 28, 2002 and reindicted on May 2, 2002 with one count of aggravated sexual assault of a child, enhanced by a prior felony. *Ex Parte Tate*, WR-71,528-02 at 100-102 (D.E. 15-10 at pp. 103-105). Petitioner pleaded not guilty and was tried before a jury in the 94th Judicial District of Nueces County, Texas.

At the trial, the victim's mother testified that she was at home asleep on the morning of the incident and was awakened by Petitioner knocking on the door. She let him in and he told her that his jaw was dislocated and asked her to call an ambulance. It was difficult for him to speak and she had trouble understanding him (3 RR 4-5; D.E. 14-13 at pp. 6-7). The mother left the apartment to use a pay telephone and was gone for approximately three minutes. When she returned, her baby was crying so she fed him upstairs and noticed that Petitioner went downstairs. At that time Petitioner was wearing only boxer shorts. Approximately seven minutes passed and the mother finished feeding the baby and went downstairs. The ambulance had not yet arrived (3 RR 5-6; D.E. 14-13

at pp. 7-8). As the mother went downstairs, she passed her daughter, E.T., on the stairs. (3 RR 6; D.E. 14-13 at p. 8).

The mother asked Petitioner if he had woken her daughter up and he responded that he had woken her up to help with his jaw. He said, "I'm sorry," and went downstairs. By this time he was fully clothed. The ambulance arrived and Petitioner left (3 RR 6-7; D.E. 14-13 at pp. 8-9).

The victim, E.T., was eleven years old at the time of trial and was eight years old at the time of the incident. She testified that she was sleeping on the couch with her sister, who was twelve at the time, when Petitioner woke her up by putting his hand on her "private part" below her waist (3 RR at 31-34; D.E. 14-13 at pp. 33-36). E.T. said Petitioner climbed on top of her and, after removing her pants, "stuck his thing in [her] private part." He then told E.T. to go into the kitchen and lie down on the floor. She did so and he again assaulted her (3 R.R. at 35; D.E. 14-13 at p. 37). At that point she became fully awake, told him to stop, and pushed him off. Petitioner told her not to tell anyone. E.T. went upstairs and saw her mother, who told her to go to bed. (3 R.R. at 36; D.E. 14-13 at p. 38).

Two days after the incident E.T. was examined by a Sexual Assault Nurse Examiner (SANE) who testified that E.T. had a small, oozing tear at the bottom of her vaginal area. The tear was consistent with the history of sexual assault reported by E.T. (3 R.R. at 12-14; D.E. 14-13 at pp. 14-16).

The jury found Petitioner guilty and on June 22, 2005 the Court sentenced him to confinement in TDCJ-CID for seventy-five years. *Ex Parte Tate*, WR-71-528-02 at 109-

111 (D.E. 15-10 at pp. 112-114). Petitioner attempted to file a direct appeal but the notice of appeal was filed one day late and dismissed for want of jurisdiction. *Tate v. State*, No. 13-05-630-CR, 2006 WL 786930 (Tex. App. –Corpus Christi 2006)(located herein at D.E. 14-3). Petitioner later was granted an out-of-time appeal and sought direct review of his conviction. The Thirteenth Court of Appeals affirmed his conviction on May 12, 2011. *Tate v. State*, No. 13-09-00247-CR, 2011 WL 1938501 (Tex. App.-- Corpus Christi 2011, no pet.)(located herein at D.E. 14-5).

Petitioner did not seek a petition for discretionary review, but did file an application for habeas corpus relief in state court on May 23, 2014. *Ex Parte Tate*, WR-71,528-02 at 2-27 (D.E. 15-10 at pp. 5-30). On June 10, 2015 the Texas Court of Criminal Appeals denied the application without a written order on the findings of the trial court without a hearing. *Id.* at "Action Taken" page (D.E. 15-8).

Petitioner filed this federal habeas action on November 20, 2015 and makes the following arguments:

(1) He is actually innocent of the charge of sexual assault of a child;

(2) He was denied effective assistance of his trial counsel when his attorney
    (a) failed to effectively present the *Batson*[3] challenge during jury selection when he did not question a potential juror on voir dire;
    (b) failed to object and obtain a ruling when the prosecutor read the enhancement paragraph out loud during arraignment, which prejudiced the jury;
    (c) failed to object when the State's witness, a police officer, said she had offered to let Petitioner take a polygraph test;
    (d) failed to request funds for an independent forensic examination to refute the SANE nurse's testimony;

---

[3] *Batson v. Kentucky*, 476 U.S. 79 (1986).

      (e) failed to object to the prosecutor engaging in willful misconduct by reading the enhancement paragraph into the record and asking the officer witness about the polygraph test;

(3) He was denied effective assistance of counsel during the motion for new trial when his attorney
      (a) failed to acquaint herself with the prior trial proceedings;
      (b) failed to interview any jurors from the trial;
      (c) failed to acquaint herself with Petitioner's prior criminal history;

(4) He was denied effective assistance of appellate counsel when his attorney presented a vague and inadequate argument that he was entitled to a limiting instruction during trial on the introduction of evidence of his prior conviction.

In her motion to dismiss, Respondent argues that three of Petitioner's causes of action are barred by the statute of limitations and the fourth, actual innocence, is not cognizable on habeas review. Respondent concedes that Petitioner's claims are exhausted and not second or successive.

## **APPLICABLE LAW**

**A. Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), a state prisoner may not obtain relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d) (West 1996).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court on

a question of law or if the state court decides a case differently than the Court on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). Although "unreasonable" is difficult to define, the Supreme Court noted that it is an objective, rather than subjective, standard and emphasized that there is a critical difference between an unreasonable application of federal law and a merely "incorrect" or "erroneous" application of federal law. *Neal v. Puckett*, 239 F.3d 683, 687 (5th Cir. 2001)(citing *Williams*, 120 S.Ct. at 1522-1523).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). A federal habeas court must determine what theories or arguments supported, or could have supported, the state court's decision. Then it must ask whether it is possible that fair-minded jurists could disagree that the arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *Harrington*, 562 U.S. at 102. Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).

The standard is very difficult to meet. "As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court litigation of claims already rejected in

state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther." *Id.* at 102. "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

If a decision by a state court is silent as to the reasons for the refusal, a federal habeas court can "look through" the decision and evaluate the last reasoned state court decision. *Bledsue v. Johnson*, 188 F.3d 250, 256 (5th Cir. 1999). A state court's factual findings are presumed to be correct and a petitioner has the burden of rebutting the presumption with clear and convincing evidence. *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006)(citations omitted). This deference extends not only to express findings of fact, but to the implicit findings of the state court. *Id.* In addition, "where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98.

**B.  Statute of Limitations**

Respondent argues that all of Petitioner's ineffective assistance of counsel claims were filed outside the one-year limitation period set by the AEDPA. Regarding the deadline for filing an application for writ of habeas corpus, the statute provides:

(d)(1) A 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of --

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or law of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244.  Petitioner filed his current application for writ of habeas corpus after the effective date of the AEDPA and so is subject to its provisions.  *Lindh v. Murphy*, 521 U.S. 320 (1997).

Petitioner's conviction became final thirty days after the Thirteenth Court of Appeals affirmed his conviction, or on June 13, 2011, which was the end of the time for seeking a petition for discretionary review.[4]  Tex. R. App. P. 68.2.  He had one year from that date, or until June 13, 2012, to file his federal petition.  He did not file it until November 20, 2015, more than three years too late.

---

[4] When a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review before he has first sought federal habeas relief, the conviction is not final for purposes of AEDPA until the conclusion of the out-of-time direct appeal or expiration of the time for seeking review of the appeal. *Jimenez v. Quarterman*, 555 U.S. 113, 121 (2009).

Under the statute, the time during which a properly filed application for state court collateral review is pending shall not be counted toward any period of limitation. 28 U.S.C. § 2244(d)(2). *See also Coleman v. Johnson*, 184 F.3d 398 (5th Cir. 1999) (petitioner entitled to equitable tolling from the time he filed his state habeas application until it was denied). However, Petitioner did not file his state application until May 23, 2014, after the statute of limitations had expired, and thus it did not serve to toll the statute of limitations. *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000).

Nor has Petitioner shown that he is entitled to equitable tolling of the statute of limitations. "'The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable.'" *United States v. Petty*, 530 F.3d 361, 364 (5th Cir. 2008)(quoting *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000)(per curiam)). The AEDPA one-year limitations period is not jurisdictional and is subject to equitable tolling at the discretion of the district court. *Id.* (citing *United States v. Wynn*, 292 F.3d 226, 229-230 (5th Cir. 2002)).

Equitable tolling is permissible only in "rare and exceptional" circumstances. *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998). A prisoner proceeding *pro se* is not a "rare and exceptional" circumstance because it is typical of those bringing § 2254 claims. *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000). Equitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights. Excusable neglect does not support equitable tolling. *Coleman*, 184 F.3d at 402. A petitioner seeking to have the AEDPA limitations period tolled must show (1) that he has been

pursuing his rights diligently, and (2) that some extraordinary circumstance stood in the way of his timely filing his habeas petition. *Lawrence v. Florida*, 549 U.S. 327, 336 (2007). The diligence required for equitable tolling is reasonable diligence, not maximum feasible diligence. *Holland v. Florida*, 560 U.S. 2549, 2565 (2010)(internal citations and quotations omitted).

Petitioner has not shown that he pursued his ineffective assistance of counsel claims diligently, or that some extraordinary circumstance stood in the way of his filing this federal habeas action before the deadline expired. Accordingly, he is not entitled to equitable tolling of the statute of limitations and his ineffective assistance of counsel claims should be dismissed with prejudice as time-barred.

## C. Actual Innocence

Petitioner also makes an actual innocence claim. In *Herrera v. Collins*, 506 U.S. 390 (1992), the United States Supreme Court reiterated the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the constitution–not to correct errors of fact. *Id.*, 506 U.S. at 400. The court does not analyze the petitioner's guilt or innocence, but only whether his constitutional rights have been preserved. *Id.* A claim of actual innocence may be made when a petitioner seeks to overcome a procedural bar, such as that his claim is second or successive, or barred by the statute of limitations. "Actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations." *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013). To meet the threshold requirement, a petitioner must show that in light of new evidence, no juror, acting

reasonably, would have voted to find him guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 329 (1995) and *House v. Bell*, 547 U.S. 518, 538 (2006)).

Petitioner submitted affidavits from the victim, E.T., and her mother, both of whom testified at his trial. In E.T.'s affidavit she stated that at the time of the trial she was very young and was manipulated and coerced into making the allegation that Petitioner sexually assaulted her. She stated that Petitioner did not ever assault her, touch her or expose himself to her. She further stated that at the time of the alleged incident, her mother was treating her for a small vaginal tear she had suffered prior to Petitioner moving into their home (Affidavit of E.T., Ex. A to Pet., D.E. 1 at pp. 18-19). E.T.'s mother stated that she had come to believe that Petitioner did not sexually assault E.T. and she recollected that E.T. already had a vaginal tear that she had received prior to Petitioner moving into their home. She wished to recant all of her trial testimony (Affidavit of Frenchala Davis, Ex. B to Pet., D.E. 1 at pp. 22-23).

The state habeas court reviewed the affidavits and compared them to the testimony and other evidence produced at the trial. The state court found that neither E.T. nor her mother were credible in their recantations and that the recantations did not affirmatively establish Petitioner's innocence. The court further found that E.T.'s statement in the affidavit about how she formed the idea to accuse Petitioner lacked credibility. In addition, the court found that the physical evidence of the oozing vaginal tear supported a finding that E.T.'s recantation was false. The court concluded that the new evidence did not outweigh the evidence of guilt and that Petitioner had not met his burden of proving by clear and convincing evidence that no reasonable juror would have found him guilty in

light of the new evidence. *Ex Parte Tate*, WR-71,528-02 at 96-98 (D.E. 15-10 at pp. 99-101).

The AEDPA presumption of correctness standard is afforded to the state habeas court's conclusion that the affidavits are not credible. *Kinsel v. Cain*, 647 F.3d 265, 270 (5th Cir. 2011). Petitioner has neither argued nor presented evidence that the state court made an unreasonable determination of the facts or that the conclusion regarding the new evidence were unreasonable under the AEDPA standard.

Even if Petitioner had made such an argument, the affidavits do not provide a basis for concluding that he met his burden under the AEDPA standard. Recanting affidavits are viewed with extreme suspicion by courts in the Fifth Circuit. *Summers v. Dretke*, 431 F.3d 861, 872 (5th Cir. 2005). In this case, both E.T. and her mother stated that the mother was treating E.T. for the vaginal tear prior to Petitioner moving into the house. No explanation is given for why neither mentioned this fact at trial, or what caused them to remember it more than eight years after the conclusion of the trial. Nor did either provide any details about how the tear occurred, or describe the treatment the mother was providing. In addition, the SANE nurse testified that the injury was consistent with the allegation E.T. made at the time that Petitioner had sexually assaulted her. E.T. also stated that she was manipulated and coerced into making the allegation of sexual assault against Petitioner. However, she did not say who manipulated or coerced her into making the allegation.

Petitioner has not shown by clear and convincing evidence that the state court's findings regarding the recanting statements are unreasonable under the AEDPA standard.

Accordingly, Respondent is entitled to summary judgment on Petitioner's actual innocence claim.

### D. Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although petitioner has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed. See *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may sua sponte rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could

conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327.

A slightly different standard applies when the claims are dismissed on procedural grounds. In that instance, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 120 S.Ct. at 1604 (emphasis added).

In Petitioner's case, it is recommended that his claims be dismissed on procedural grounds. Reasonable jurists would not find it debatable that Petitioner's claims are time-barred or that his actual innocence claim does not provide a gateway to have his habeas claims heard. Therefore it is further recommended that any request for a COA be denied because he has not made the necessary showing for issuance of a COA.

## RECOMMENDATION

It is respectfully recommended that Respondent's motion for summary judgment (D.E. 16) be granted. Petitioner's claims regarding ineffective assistance of counsel should be dismissed with prejudice because they are time-barred. Petitioner's actual innocence claim also should be dismissed because he cannot show that, in light of new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a

reasonable doubt. It is further recommended that a Certificate of Appealability be denied.

Respectfully submitted this 22nd day of July, 2016.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).